UNITED STATES DISTRICT COURT
WESTERN: DISTRICT OF NEW YORK

---

BRIAN BAGLEY

Plaintiff,

v.

ONTARIO COUNTY
MARK EIFERT, Personal Capacity of a N.Y.S. Trooper(I.D. 161)
CHRISTOPHER BALDWIN, Personal Capacity of a N.Y.S. Trooper (I.D. 1222)
ANDREW BROWER, Personal Capacity of a N.Y.S. Trooper (I.D. 2673)
SIDNEY BRIGHT, Personal Capacity of a N.Y.S. Trooper
REBECCA EDINGTON, Personal Capacity of an O.C.S.D. (135)
JOHN DOE #1, Personal Capacity of an O.C.S.D.
JOHN DOE #2, Personal Capacity of an O.C.S.D.
JOHN DOE #3, Personal Capacity of an O.C.S.D.

Defendants,

**PLAINTIFF AMENDED COMPLAINT PURSUANT TO §42 U.S.C. 1983**

**JURY DEMAND**

19-CV-6242 (CJS)

---

PLAINTIFF, a special needs qualified individual addresses applicable provisions pursuant to, New York Section § 38 (8701). Plaintiff's mental health condition constitutes special circumstances when diagnosed with suicidal behavior, resulting in a suicide attempt to end his life. In addition to said mentioned mental disability, Plaintiff is also faced with an pre-existing medical injury concerning blood clot(s), requiring surgery(ies). In the interest of Justice, the above court have been placed upon notice within the Western jurisdiction hereby:

2. States that he is a qualified individual under the A.D.A., requesting an even playing field via reasonable accommodations for his special needs under special circumstances requesting adequate time to perfect his strongest arguments, coupled with appointment of Counsel, affording the necessary reasonable accommodations. 1973 § 504, 29 U.S.C.A. § 794 (a) 1990 §§ 301, 302, U.S.C.A.§§ 12181(7) (f) 12182. 504 Rehabilitation Act (Title 2). Plaintiff in good faith provides the court with a prima facie showing of medical records establishing a serious disability warranting entitlement. See: letter motion provided to the court. In addition, the court clerk ensures that Plaintiff can use reasonable accommodations.

3. Plaintiff has named several (John Does 1-3) as Defendants in his allegations. Requesting that the court instruct the Attorney General of the State of New York ascertain, if possible at this time, the full names of these Defendants, also where these Defendants can be currently served. This order merely provides a means by which Plaintiff is seeking the identity of these Defendants as instructed by the Second Circuit. Plaintiff is seeking the identity of John Does, #1-3 involved in Plaintiff's arrest, that resulted in violating his Constitutional Rights, coupled with provision under N.Y.S.H.R.L., under §8-101 policy.

## PLAINTIFF'S REQUEST FOR COUNSEL

4. It is well settled within the Western District Court must determine whether an indigent's position seems likely to be of substance, such as Plaintiff's disabilities, and that the claim meets the threshold requirements, introducing mental health and physical conditions. The courts should then consider a number of the factors in making its final determination of said psychiatric evaluations, also medical conditions, Major life activities 29 C.F.R. § 1630.2 (J) (I) (ii).

## PLAINTIFF'S LEGAL STANDINGS

5. Plaintiff requests that the court review all moving papers with special solicitude, and construed liberally and interpreted to raise the strongest arguments that they suggest.

## EXCESSIVE FORCE

6. It is well settled Law within the 2nd Circuit Court, that there stands a relationship of the need also the amount of force being used, to affect the arrest. Plaintiff contends that while parked at 482 North Main Street, in Canandaigua, New York, at approximately 16:00, Defendants Eifert (I.D. 161) and Baldwin (I.D. 1222), approached Plaintiff, asking offensive questions. In an aggressive manner, immediately after, began assaulting Plaintiff by bashing his head into the door jam of his van, where the seat belt adjuster sticks out. During this point, Defendant Baldwin joined in

with Eifert in the assault and battery, by participating in a sadistic manner, by also bashing Plaintiff's head. Plaintiff, fortunately was able to start his vehicle, immediately accelerated on gas pedal in means of preventing any further injuries. Shortly after, Eifert gave chase reaching Plaintiff's residence, Plaintiff exits vehicle on foot. Defendant Eifert maliciously and sadistically rammed his vehicle into Plaintiff with the intent to cause harm, not to restore discipline in good faith, instead violated Plaintiff's Constitutional Rights for the very purpose of causing harm.

Personal Involvement - of Defendants acting under the color of State Law.

### A. Defendant Eifert

7. Defendant bashed Plaintiff's head into the door jam post, as Plaintiff sat inside vehicle, (driver's seat). Defendant intentionally used his vehicle, as a dangerous instrument. While Plaintiff was on foot, Defendant rammed Plaintiff, instantly catapulting him into a plate glass window. The court cannot hold the gratuitous use of force by an officer can constitute an objectively reasonable use of force as a matter of law.

### B. Defendant Baldwin

8. Assisted Eifert in the assault, by bashing Plaintiff's head, with closed fist. In addition, Defendant, a (Superior officer), allowed Defendant Eifert to directly ram Plaintiff while on foot in an unmarked car. Defendant Baldwin's actions were so egregious, so outrageous that it may be fairly to say shocking to contemporary conscience. Defendant violated Plaintiff's Due process in a failure to supervise subordinates, to properly affect the arrest without violating Plaintiff's Constitutional Rights.

### C. Defendant Brower

9. Plaintiff contends that Defendant Brower was at the scene of the arrest and failed to intervene when Defendants used malicious intent to do harm while defenseless. The 2nd Circuit has held even if these Defendants did not personally apply excessive

force against Plaintiff, Defendant Brower could be liable for failing to intervene, when observing excessive force. Defendant Brower violated Plaintiff's Constitutional rights by conduct committed by other officers in his presence.

## D. Defendant Bright

10. Plaintiff contends that he observed Defendant Bright present at the scene of incident. Defendant, during assault, following arrest, failed to intervene, in preventing excessive tasing. However, Defendant claims he read Plaintiff his Miranda Rights, as well as participated in. Incident report, state that the Defendant also followed behind the ambulance in accompanying Plaintiff, using a trooper car, to the Rochester hospital, where Plaintiff was treated for serious injures, places the Defendant at the scene. Defendant Bright's acts were objectively unreasonable in the circumstances, and found liable. Defendant observed Plaintiff in a defenseless state already badly beaten. Defendant Bright's failure in preventive tactics, violated Plaintiff's due process.

## E. Defendant Edington

11. Female Deputy Edington, failed to take preventive measures in refraining Defendants, from use of excessive force. Defendant had a realistic opportunity to intervene to prevent the excessive force of fellow officers from happening, but failed to do so.

## F. Defendant Doe #1

12. Defendant (John Doe #1) acts were objectively unreasonable in the circumstances. Plaintiff, in a defenseless state already after he had been struck by Defendant Eifert's vehicle and seriously injured. Defendant John Doe #1's conduct was not necessary to affect the arrest when pinning his foot on Plaintiff's face, after being struck by vehicle, while being repeatedly tased.

## G. Defendant Doe #2

13. Plaintiff contends that Defendant John Doe #2 used excessive force when repeatedly tasing Plaintiff, while already subdued, and struck by vehicle. Moreover,

Defendant John Doe #2 was not faced with any split decisions that is necessary in a particular decision when an officer maybe threatened. This intentional wrongful physical contact with another constitute a battery, regardless of whether force is consider reasonable as applied during a lawful arrest. There was no need to repeatedly tase, or tased at all. Plaintiff did not pose a threat.

## H. Defendant Doe #3

14. Plaintiff contends that he observed John Doe #3 subdue him in an aggressive manner by pinning him down while John Doe #2, repeatedly tased him. Any reasonable officer can clearly determine that the Plaintiff's Constitutional Rights were violated, must be resolved by the fact finder, during discovery stages.

## PROBABLE CAUSE

15. Plaintiff contends that Defendants had no Probable cause to assault him when parked in his vehicle, Defendants Eifert and Superior ranking officer Baldwin questioned Plaintiff in a hostile manner with offensive questions, followed by a physical assault on Plaintiff. The 911 report, T.R.I. will establish that Plaintiff was not armed and dangerous with a firearm nor any weapon was confiscated. Defendants abused their authority when failing to adhere to Plaintiff's Due Process Rights. By not instructing Plaintiff to Station House, followed by performing an investigation, in addition, affording Plaintiff to an Attorney, under Due Process Rights.

## PLAINTIFF'S INFRINGEMENT CONCERNING
## FOURTH AMENDMENT RIGHTS

16. Tanya Buzalko, Advocate for Child Protective Service, contacted victim's father to bring the victim to the Child Advocacy Center. There was also, Assistant District Attorney, Ritts, present, at 482 North Main Street Canandaigua, New York.

Plaintiff's Fourth Amendment Rights were violated when Defendants Eifert and Senior Investigator Baldwin approached Plaintiff in a hostile manner, coupled with offensive questions, while inside his vehicle, parked 50 yards outside of 482 North Main Street of Child Advocacy Center. Individuals Present: Assistant District Attorney,

Ritts, and Counselor Ashley Divoli were Defendants conducted a series of questions to the victim. Outside of Center, Plaintiff was parked, and remained inside his vehicle at all times, did not warrant Defendants use of physical force. As a general rule, Section 1983, seeks to State Actors from using the badge of their authority in depriving Plaintiff of his Federally Guaranteed Rights.

Defendant Eifert's statement in arrest report:

"After completion of BATTING'S interview at the Child Advocacy Center, I was told BRIAN BAGLEY was observed in the parking lot. Myself and Senior Inv. CHRISTOPHER BALDWIN found BAGLEY parked in the south side parking lot, in his 2003 Chrysler Town and Country mini van, color grey, bearing NY reg: EPIC BVB. I interview BAGLEY for a short time. He said he was in the parking lot for his daughter. When I asked how he knew his daughter was nearby, he answered "GPS". BAGLEY denied any wrong doing. I told BAGLEY he was under arrest and he locked the minivan's doors. I was able to unlock the door and a struggle ensued. BAGLEY was able to start the van and flee the scene. A pursuit was initiated and ultimately ended in the driveway of 100 Crimson King Drive, Canandaigua, NY 14424, In the Town of Hopewell NY, Ontario County. BAGLEY was injured while being taken into custody. He was transported to Strong Memorial Hospital, Rochester, NY, by Canandaigua Emergency Squad. Trooper ANDREW BROWER maintains custody of BAGLEY, in the ambulance, while Trooper SIDNEY BRIGHT followed behind in a Troop car."

### PLAINTIFF'S STATE CLAIM OF ASSAULT AND

### BATTERY AND FAILURE TO INTERVENE

Failing to Intervene

Plaintiff states his Constitutional Rights were violated by the conduct committed by officers in his presence. Defendants Edington, Bright, Brower, John Doe #1, and John Doe #3. All officers mentioned, arrived in adequate time to witness the interaction between Plaintiff and Defendants.

Assault and Battery

Plaintiff states that the conduct of the officers was not reasonable within the meaning of New York Statute, concerning justification of law enforcements use of force in the course of duties. Penal Law §35.30 subd.(1).

## MONELL LIABILITY

Plaintiff establishes a direct casual link when suffering a violation of Federal Law committed by Ontario County customs, policies, and training Defendants.

## QUALIFIED IMMUNITY

Plaintiff states that the Defendants are not entitled to qualified immunity due to the facts shown by the Plaintiff.

## SOUGHT OF RELIEF

Pursuant to Rule 8, subd. A(3), of the Federal Rules of Civil Procedures, by form of recklessness, careless, intentional deliberate infliction and pain, as well as other acts of the Defendants while acting under the color of State Law and job capacities:

The foregoing damages and injuries sustained to Plaintiff were caused solely by virtue of intentional infliction of pain, wilful malicious of the Defendants and O.C.S.D.

By the reasons of the above acts and omissions of said Defendants, Plaintiff was forced to undergo physical and psychological pain and suffering, blood clot(s), permanent scars, emotional, mental distress, nightmares, inability to sleep, illegally arresting and confining him without probable cause, Due Process Rights.

Plaintiff seeks punitive damages in the sum of three hundred thousand dollars ($300,000.00) from each Defendant, compensatory damages in the amount of Three hundred thousand dollars ($300,000.00). Monetary damages in the amount of Five hundred thousand dollars($500,000.00).

TRIAL BY JURY AS WELL AS ANY OTHER RELIEF THIS COURT DEEMS JUST AND PROPER.

Signed this 27 day of December , 20 19 . I declare under penalty
of perjury that foregoing is true and correct.

Brian Bagley

17B0112

Green Haven Correctional

P.O. Box 4000

Stormville, N.Y. 12582

I declare under penalty of perjury on this 27 day of December , 20 19,
I will deliver this complaint to prison authorities to be mailed
to the Pro Se Office of the United States District Court for the
Western Distrcit of New York.

Brian Bagley 17B0112

EXHIBIT (A)
Medical Records

Form 3124 (4/11)

# NYS DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
## AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION INCLUDING
## CONFIDENTIAL HIV RELATED INFORMATION
### (COMPLETE BOTH SIDES)

| | | Date Received |
|---|---|---|

| Print Name (include alias) *Digital Brian* | Date of Birth *11/3/67* | DIN# *13011 2* |
|---|---|---|
| Social Security # | Address | |

I understand that confidential HIV related information is any information indicating that a person had an HIV related test, or has HIV infection, HIV related illness or AIDS, or any information which could indicate that a person has been potentially exposed to HIV (Human Immunodeficiency Virus).

Under New York State and Federal law, except for certain people, protected health information including HIV related information, can only be given to persons you allow by signing an authorization.

I understand that the information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient if the recipient is not a health care provider or health plan covered by the laws. Such redisclosure is restricted/limited by NYS Public Health Law 27-F.

By completing and signing this form, I authorize the use or disclosure of my health information as described below, which may include medical, mental health, dental records, and confidential HIV related information.

The following individual or organization is authorized to make the disclosure and provide the information as indicated below:

| Name of Entity Disclosing Information *Ontario County* | Address of Entity Disclosing Information |
|---|---|
| Name of Entity Receiving Information **Elmira Correctional Facility** | Address of Entity Receiving Information **PO Box 500, Elmira, NY  14902-0500** |

Purpose of Disclosure **REQUIRED**   ☐ Check if for Continued Treatment      **FAX: 607-734-7224**

☐ At the request of patient OR representative

☐ Third Party Request, why is information needed? _____

The type of information, limited to need and specified dates:        FROM     /     TO

| | | | | |
|---|---|---|---|---|
| ___ AHR, orders | ___ most recent ___ | other/specify dates | | |
| ___ problem list | ___ most recent · ___ | other/specify dates | | |
| ___ progress notes | ___ most recent ___ | other/specify dates | | |
| ___ medication list | ___ most recent ___ | other/specify dates | | |
| ___ history & physical | ___ most recent ___ | other/specify dates | *While @ County* | |
| ___ discharge summary | ✓ most recent ___ | other/specify dates | | |
| ___ laboratory results | ✓ most recent ___ | other/specify dates | | |
| ___ x-ray/imaging rpts. | ✓ most recent ___ | other/specify dates | | |
| ___ consultation reports | ✓ most recent ___ | other/specify dates | | |
| ___ entire record | ___ most recent ___ | other/specify dates | | |
| ___ list of allergies | ___ TB history/treatment ___ immunization record | | | |
| ___ FHS1 | HIV/AIDS, hepatitis B, hepatitis C specific to Family Reunion Program participation | | | |
| ___ other *Work up for lower extremity to edema* | | | | |

## REQUIRED SIGNATURES ON PAGE 2

# AUTHORIZATION FOR USE OR DISCLOSURE OF
## PROTECTED HEALTH INFORMATION INCLUDING
## CONFIDENTIAL HIV RELATED INFORMATION

I understand that I may refuse to sign this authorization and that my refusal to sign will not affect my ability to obtain treatment or payment or my eligibility for benefits. I may inspect or copy any information used/disclosed under this authorization.

I understand that I may revoke this authorization in writing, at any time, by delivering or sending a copy of the revocation to the person(s) or entities I have authorized to use or disclose information as listed on Page 1. I understand that a revocation is not effective to the extent that the person(s) named has relied upon this authorization.

This authorization expires _____ 1/17/18 _____
(REQUIRED insert date or event)

X _____ BK Perry _____          1/17/17
(REQUIRED: Signature of Patient or Representative)          (REQUIRED: Date Signed)

Bagley Brian
(REQUIRED: Print Patient's Name)

Sandra Kelsey NPC
(PRINT NAME OF REPRESENTATIVE)

Check one:          ___ Parent/Guardian
                    ___ Executor/Administrator (also send court papers proving such)
                    ___ Agent (by health care proxy)

The Department of Corrections and Community Supervision CANNOT release Psychiatric Information maintained by the Office of Mental Health. A separate authorization addressed to the Office of Mental Health must be sent to:

**Office of Mental Health, Forensic Bureau, 44 Holland Avenue, Albany, NY 12226**

OFFICE PROCESSING

SEND COPY OF AUTHORIZATION FORM WITH REQUESTED HEALTH RECORD COPIES TO REQUESTER

_____          _____
Date Information Sent                    Signature/Title

To the recipient: This information has been disclosed to you from confidential records which are protected by law. State law prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. Any unauthorized further disclosure in violation of state law may result in a fine or jail sentence or both. A general authorization for the release of medical or other information is not sufficient for further disclosure.

Copy: Patient
Original: Health Record/Miscellaneous Section

Bagley, B
**Patient's Name**   17B0112   **DIN**   GMCF040

| Date | Time Incl. AM/PM | Health Provider Progress Notes (Use Black Ink) Complete with Signature/Credentials — Do Not Leave Blank Lines Between Entries | Provider ID # |
|------|------|------|------|
| 3/24/17 | 425p | Pt returned from Glens Falls ER and admitted to IPC on a 1:1 MH watch. A+O x3. NAD. No c/o's. Up ad lib. Independent c ADL's. V/s stable. Has dsgs both sides of neck and both forearms. Was given multiple sutures. Will remove dsg later. Pt quiet, cooperative. MH RN notified of admission. Will monitor ————— P | |
| 3/24/17 | 7p | Dsgs removed both arms. Has 12 stitches Ⓛ arm · 13 stitches Ⓡ arm. Edges well approximated. No bleeding at present. Has two dsgs on neck. Remains on 1:1 MH watch. Will continue to monitor ————— P | |
| 3/24/17 | 10P | Inmate laying on bunk covered c mat. Arms are where they can be seen. Dsg intact on neck. No signs of distress. No voiced complaints. Remains on 1:1 MH watch. Will continue to monitor c ———— D Hawley RN | |
| 3/20/17 | 5A | Remains on 1:1 watch laying on R side facing door able to see both arms. Dsg intact on neck. Remains on 1:1 watch. | |

**INFIRMARY PHYSICIAN NOTE REQUIREMENTS**
New Admission - 1st two weeks, 3 notes/week
Continuing - 1/week or more frequently as indicated by Plan of Care

**RMU - PHYSICIAN NOTE REQUIREMENTS**
Ill Patients - As needed, based on clinical judgement
Routine Patient Encounters - Minimum 1/week or more frequently as indicated by Plan of Care

**ANCILLARY SERVICES (DOCCS STAFF)**
(Psychologists, physical therapists, speech pathologists, occupational therapists, clinical nutrition staff, etc.) Whenever a range of services are provided on a routine basis (single visits done on Consultation Rpt.)

**INFIRMARY NURSING NOTE REQUIREMENTS**
New Admission - Once per shift for first 48 hours
Seriously Ill - Once per shift
Chronically Ill - Once per 24 hours

**RMU NURSING NOTE REQUIREMENTS**
New Admission - Once per shift for first 48 hours
Critically Ill - Once per shift, more frequently as condition warrants
Chronically Ill - Every shift by Nurse in Charge to document findings of Nurse's Health Care Assistant (HCA), by HCA when vital signs taken, Monthly by Primary Care Nurse including complete assessment, Periodically to document encounters, i.e. changes in patient status, PRN medication administration including reason and reaction, refusal of treatment and visitors.

# PROGRESS NOTES
### (To be used by all Health Providers)

Bagley

**Patient's Name**

**DIN** 17B0112

GMCF040

| Date | Time Incl. AM/PM | Health Provider Progress Notes (Use Black Ink) Complete with Signature/Credentials  Do Not Leave Blank Lines Between Entries | Provider ID # |
|---|---|---|---|
| 3/25/17 | 7am | A/O x3, VSS, OOB w/steady gait, indep w/ADL's, lacerations and sutures to bilateral inner forearms remain CDI and well approximated, Dressing to ® site of neck changed, dried drainage on old bandage - ∅ active drainage to wound - steri-strips in place to ® neck - dry, intact, © dressing on neck CDI, ∅ voiced c/o's, NAD, remains on 1:1 MHU watch - will cont to monitor —MKorzyekRN | |
| 3/25/17 | 7:45a | Inmate ate breakfast tray provided- MKorzyekRN — | |
| 3/25/17 | 11:45a | Inmate ate lunch tray provided MKorzyekRN | |
| 3/25/17 | 2p | Inmate appears to be resting comfortably in his cot all this shift. OOB prn to BR. Ate dinner. VSS. In NAD - is able to swallow ok. breathing/respirations are good/WNL. He is afebrile - Has been taking po Keflex; has not complained of pain in wound areas - Bilateral neck dressings are CDI; There are currently no dressings on his forearms. Inmate's suture on forearms are D&I, and well approximated. No noteable bleeding or drainage. Inmate knows of how many internal and External sutures that he has. Ate dinner. VSS. In NAD; Inmate gives good eye contact; affect is pleasant? Inmate states that this was an impulsive act although affect and inmate refusing to talk in front of correctional for safety on what his trigger/reason for this serious attempts. Inmate currently denies SI, but once again inmate's 1st suicide attempt has (cont) P/CaBenie 42 | |

# PROGRESS NOTES
### (To be used by all Health Providers)

Bagley

**Patient's Name** _____ 17 13 011 2 **DIN** _____ GMCFO40

| Date | Time Incl. AM/PM | Health Provider Progress Notes (Use Black Ink)   Complete with Signature/Credentials <br> Do Not Leave Blank Lines Between Entries | Provider ID # |
|------|------|------|------|
| 3/25/17 | 10 PM | been acute serious. He continue to rest comfortably on cot. Continue to monitor closely. — M Calvo RN 43 B | |
| 3/25/17 | 10³⁰p | Inmate moved from ISO # 5 to Drug Watch Rm # 2 per Dep of Security. VSS Neck dsg D+I, No signs of distress, No voiced complaints. Will continue to monitor. Remains on 1:1 watch. — D Hawley LPN | |
| 3/26/17 | 17 | No changes during shift. Remains on 1:1 watch. — D Hawley LPN | |
| 3/26/17 | 7am | A/O x3, VSS, OOB w/steady gait, indep w/ADL's, sutures to (L) and (R) inner forearms CDI and well approximated OTA — dressings on (L) and right sides of neck CDI, Took AM Keflex per MD order, Ø voiced ¢/o's, NAD — remains on 1:1 M/H Watch — Will cont. to monitor — M Cosgrove RN — | |
| 3/26/17 | 7:30a | Inmate ate breakfast tray provided — M Cosgrove RN — | |
| 3/26/17 | 11:45a | Inmate ate lunch tray provided — M Cosgrove RN — | |
| 3/26/17 | 2P 10p | Inmate remains on 1:1 watch p̄ suicide attempt. Presents as anxious and tremulous. BR X 1. All sutures are intact, dry and well approximated; neck dressings are CDI. States he was slightly dizzy upon rising from | (cont) N Cruz LPN |

**INFIRMARY PHYSICIAN NOTE REQUIREMENTS**
New Admission - 1st two weeks, 3 notes/week
Continuing - 1/week or more frequently as indicated by Plan of Care

**RMU - PHYSICIAN NOTE REQUIREMENTS**
Ill Patients - As needed based on clinical judgement
Routine Patient Encounters - Minimum 1/week or more frequently
as indicated by Plan of Care

**ANCILLARY SERVICES (DOCCS STAFF)**
(Psychologists, physical therapists, speech pathologists, occupational
therapists, clinical nutrition staff, etc.) Whenever a range of services are
provided on a routine basis (single visits done on Consultation Rpt.)

**INFIRMARY NURSING NOTE REQUIREMENTS**
New Admission - Once per shift for first 48 hours
Seriously ill - Once per shift
Chronically ill - Once per 24 hours

**RMU NURSING NOTE REQUIREMENTS**
New Admission - Once per shift for first 48 hours
Critically ill - Once per shift, more frequently as condition warrants
Chronically ill - Every shift by Nurse in Charge to document findings of
Nurse's Health Care Assistant (HCA), by HCA when vital signs taken,
Monthly by Primary Care Nurse including complete assessment, Periodically
to document encounters, i.e. changes in patient status, PRN medication
administration including reason and reaction, refusal of treatment and visitors.

Side Two

## PROGRESS NOTES
### (To be used by all Health Providers)

Patient's Name: Barley

DIN: 17B 041 2

GMCF040

| Date | Time Incl. AM/PM | Health Provider Progress Notes (Use Black Ink) Complete with Signature/Credentials<br>Do Not Leave Blank Lines Between Entries | Provider ID # |
|------|------------------|---|---|
| 3/26/17 (cont) | 2° - 10° | from bed to BR. Has been eating and drinking, ambul- Continues on po Keflex 500mg po given at 7pm tonight per MD order. To be evaluated by Mental Health | |
| | 10 PM | on 3/27/17. Continue to monitor closely. pa Pulse 133 Addendum: Pulse remains elevated - will continue to monitor and notify MD if remains ↑ M.A.Pulse now 132 | |
| 3/26/17 | 10 p | Inmate laying on bunk covered c mat. Resp easy non labored. No signs of distress no voiced complaints. Will continue to monitor. Remains on 1:1 watch. ——— D.Hawley RN | |
| 3/27/17 | 6³⁰a | Remains on 1:1 Will Continue to monitor. ——— D.Hawley RN | |
| 3/27/17 | 7am | A/O x3, VSS, OOB w/steady gait, indep w/ADLs, Ⓞ voiced c/o's, NAD, sutures to bilateral Forearms remain CDI / well approximated, dressings to Ⓡ and Ⓛ side of Neck d/d, Steri-strips on both sides of neck - CDI w/scant drainage - remains on 1:1 MHU watch - Will cont. to Monitor - N.McQueen RN ——— | |
| 3/27/17 | 7:45a | Inmate ate Breakfast tray provided - N.McQueen ~ | |
| 3/27/17 | 11:45a | Inmate ate lunch tray provided - N.McQueen ~ | |
| 3/27/17 | 7p | A/O x3. NAD. No c/o's. Up ad lib. Independent c̄ ADL's. V/S stable. Sutures intact both arms and OTA. Dsgs on both sides of neck D.I. Remains on a 1:1 MH watch. Last dose of ABX given. Will continue to monitor ——— | |

EXHIBIT (B)
Mental Health Records

FORM 3150 (7/16)      STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# DOCCS - MENTAL HEALTH REFERRAL

This form may be completed by any employee to request mental health services for an inmate. Please press hard - you are making four (4) copies.

INMATE NAME: Bagley, Brian                                  DATE: 3/24/17

DIN: 17B0112   FACILITY:                CELL LOCATION: E8-18     TIME: 9:50  AM/PM

REFERRED BY: CWOn                        TITLE: RN              EXT: 6151

1.    Refer to the checklist below and check each item which applies for the inmate. Please be as complete and accurate as possible.

---

### A. IMMEDIATE PHONE REFERRAL

**KNOWLEDGE OF BASIC FACTS**
Does not know:
- ☐ Own name
- ☐ Where he/she is
- ☐ Day of week
*(If any of the above boxes are checked, please refer the inmate to DOCCS Medical immediately. Inmate must be seen by Medical prior to Mental Health.)*

**POSSIBLE SUICIDE RISK**
Talks about or writes:
- ☐ Feeling hopeless
- ☐ Giving up
- ☐ Feeling helpless
- ☐ Being worthless
- ☐ Life not being worthwhile
- ☐ Killing self
- ☑ Cutting self
- ☐ Hanging self
- ☐ Overdosing
- ☐ Swallowing foreign objects
- ☐ Starting fires
- ☐ Harming self in other ways

**NON-VERBAL /UNUSUAL BEHAVIORS**
- ☐ Appears very fearful or nervous for no apparent reason
- ☐ Cries often for no apparent reason
- ☐ Appears sad
- ☐ Handles own urine or feces
- ☐ Suddenly refuses to leave cell most of the time

---

### B. REGULAR REFERRAL

**NON-VERBAL /UNUSUAL BEHAVIORS**
- ☐ Does not speak
- ☐ Significant change in program attendance
- ☐ Significant change in visiting habits

**VERBAL BEHAVIORS**
- ☐ Significant change in communicating
- ☐ Suddenly begins to yell and scream

**VERBAL/UNUSUAL THINKING**
Talks about:
- ☐ People being out to get "Me"
- ☐ Grandiose plans or schemes
- ☐ Unusual religious preoccupations
- ☐ Hearing voices

**APPEARANCE AND HYGIENE**
- ☐ Sudden change in appearance, has poor hygiene, has an offensive odor, etc.

**EATING AND SLEEPING HABITS**
- ☐ Significant change in sleeping habits
- ☐ Significant change in eating habits

**SEXUAL ABUSE**
- ☐ Possible victim of sexual abuse

**SELF REFERRAL**
- ☐ Inmate requesting to see OMH - note reason in Section C below.

---

C. FOR ANY OTHER REASON: Inmate sliced both sides of neck and both forearms.

---

Actions:  • Any box checked in Section A, make an immediate phone referral to Mental Health and notify the Watch Commander.
• Any box checked in Section B, make a regular referral to Mental Health.
• If for any other reason you feel there is a significant problem with the inmate, notify Mental Health and call the Watch Commander.

3. Type of Mental Health Notification:    ☐ Regular Referral    ☑ Immediate Phone Referral
If immediate referral, name and title of clinician contacted is required. In addition, at a facility with no Mental Health clinician, print the name of the Watch Commander notified:

Bonnie Santini OMHRN @ 9:10am
NAME & TITLE OF OMH CLINICIAN OR WATCH COMMANDER CONTACTED

TO BE COMPLETED BY MENTAL HEALTH UNIT:

Inmate: Bagley                          was seen on  3-27-17      by OMH staff.

COMPLETED BY:  C. Theym          v. Tchef          17cd
                    Clinician Name              Title          Phone Extension

The source of a mental health referral and information provided on the referral may be protected from disclosure under Sections 33.13 and 33.16 of the Mental Hygiene Law, if such disclosure could be detrimental to the referral source, the patient, or other persons.

**Distribution:** Take off Goldenrod copy for the referral source. Notify your immediate supervisor and forward the referral form to OMH. In ap facility without OMH staff on site forward the referral form to Medical.

If inmate is placed on a suicide watch in RCTP by DOCCS, this form must be hand delivered to the Mental Health Unit so OMH will have it upon return to duty.

After completion by OMH submit:     White - OMH     Canary - Referral Source: Security send to DSS; Civilian send to DSP     Pink - Medical

| | |
|---|---|
| CENTRAL NEW YORK PSYCHIATRIC CENTER<br><br>**RCTP**<br>**OBSERVATION/ DORM**<br>**INITIAL PROGRESS NOTE** | **Patient's Name:** BAGLEY, BRIAN<br>**C #:** 559921<br>**DIN #:** 17B0112<br>**Date of Birth:** 11/13/1967<br>**Unit Name:** SULLIVAN CF-723<br>**Date of Admission / Transfer to RCTP:** 06/20/2017 |

**Cont.**
**06/21/2017**

According to record Bagley was admitted to CNYPC for the 1st time from Great Meadow CF on 4/5/17. According to the TTPN and 2PCs: Prior to CNYPC admission on 3/24/2017 Mr. Bagley was admitted to GMCF / RCTP upon return from Glens Falls Hospital where he was sent after a serious suicide attempt by cutting his neck and forearm. Patient reported that he cut himself because he was feeling depressed and was fearful from officers as he already had problems with officers due to the nature of his crime".

He is discharged from CNYPC on 6/20/2017 with following diagnosis:
F43.23 - Adjustment disorders, with mixed anxiety and depressed mood (P) Currently he takes Remeron 15 mg tab PO PM for anxiety, depression and insomnia His MHSL is 1S
Treatment team is in agreement with the above noted diagnosis and MHSL as well as medication given from CNYPC.

As per policy CSRA is reviewed and reneged. Core history reviewed and updated. TTN reviewed and updated. Patient is in agreement with his current diagnosis, treatment plan, goals and objectives.

**RELEVANT MEDICAL ISSUES:**
T14.8 - Other injury of unspecified body region  06/20/2017
R60.9 - Edema, unspecified  06/20/2017

**MENTAL STATUS:**

| | |
|---|---|
| Appearance: | . Neat and clean. |
| Behavior: | . Calm and cooperative. |
| Speech: | . Normal. |
| Eye Contact: | . Good. |
| Impulse: | . Normal. |
| Attitude: | . Cooperative. |
| Mood: | . Neutral. |
| Affect: | . Appropriate to content. |
| Thought Process: | . Clear and coherent. |
| Thought Content: | . Unremarkable. |
| Perceptions: | . None reported or observed. |
| Delusions: | . None reported or observed. |
| Sensorium: | . Alert and oriented. |
| Insight/Judgment: | . Fair for the current setting. |
| Intellectual/Cognitive Functioning: | . Estimated average. |
| Other Observations? | |

NOTE: THIS REPORT IS STRICTLY CONFIDENTIAL AND IS FOR THE INFORMATION ONLY OF THE PERSON/AGENCY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED BY CENTRAL NEW YORK PSYCHIATRIC CENTER IF IT IS MADE AVAILABLE TO ANY OTHER PERSON, INCLUDING THE PATIENT. DESTRUCTION OF THIS MATERIAL IS REQUIRED AFTER STATED USE.

**SUICIDEN RISK ASSESSMENT:**

1.) Are there any changes in acute or chronic risk factors or protective factors noted on the CSRA?

☐ Yes   ☒ No   If yes, describe briefly and update the CSRA:

2.) Describe suicide warning signs/triggers which are present or indicate none present *(IS PATH WARM warning signs; prison-based or individual triggers)*:

| CENTRAL NEW YORK PSYCHIATRIC CENTER<br><br>RCTP<br>OBSERVATION/ DORM<br>INITIAL PROGRESS NOTE | Patient's Name: | BAGLEY, BRIAN |
|---|---|---|
| | C #: | 559921 |
| | DIN #: | 17B0112 |
| | Date of Birth: | 11/13/1967 |
| | Unit Name: | SULLIVAN CF-723 |
| | Date of Admission / Transfer to RCTP: | 06/20/2017 |

| | Interview conducted in a confidential interview room: ☐ Yes ☐ No |
|---|---|
| Date & Time | If No, document reason: |
| 06/21/2017<br><br>02:00 PM | **REASON FOR ADMISSION:** RCTP DISCHARGE NOTE:<br>**INTIAL CONTACT:**<br>TTN, DISCHARGE SUMMARY CORE HISTORY, CSRA, MEDICATION, DIAGNOSTIC, MHSL AND TPR REVIEW:<br><br>Mr. Brian Bagley is 49 years old male serving his 1st NYS BID with sentence of 31 to life for Predatory Sexual Assault, Rape 2nd, Rape 3rd, Criminal Sex Act 3rd, Escape from Jail/Custody, Resisting Arrest and Unlawful Fleeing from Police convictions. He was discharged from CNYPC to Sullivan CF and admitted to RCTP for MH clearance before released to GP. He was admitted to RCTP observation cell on 6/20/2017 off hours.<br>**SESSION CONTENT:**<br>Today Mr. Bagley is seen in a private room for current MH status evaluation. During the evaluation Dr. Mahmud and Ms. Dielh were present. After acknowledged the above noted conviction he claimed that he is innocent of the crime. "My wife passed away 2 years ago. I was living with my step daughter who she accused of me for the above noted crimes, which I did not do any of them. She was hanging out with her boyfriend and using drugs and drinking alcohol. I was trying to discipline her. However, she accused me for the above noted crimes now I am here." He also made statement that his step daughter's birthday was yesterday. "I hope she realizes what she has done to me and recent her statement."<br><br>Mr. Bagley reported that he was admitted to CNYPC due to engaging in a suicide attempt. Writer inquired about the trigger for his suicide attempt and he stated "I was being harassed and threatened by the CO's because of my crime". Mr. Bagley reported that he cut both his forearms and both sides of his neck with a state issued razor in an attempt to end his life. Mr. Bagley reported that he had about 126 sutures Mr. Bagley did show this writer his arm and his neck and he had visible cuts. Mr. Bagley reported that he attempted to request help from OMH and that he attempted to be placed in PC, but he indicated that he was denied both. Mr. Bagley reported that he was previously in PC for a short time while at Elmira CF. Mr. Bagley further reported that not receiving the help he was requesting also contributed to his engagement in his suicide attempt. Mr. Bagley denied any other history of self-harm or suicidal ideation/behaviors and he reported that the prison environment caused him to be "hopeless" which led to his suicide attempt. Mr. Bagley denied current suicidal ideation, intent, or plan. Mr. Bagley reported that he has multiple family supports, such as his parents, niece, and sisters that he remains in regular contact with.<br><br>According to core history "Mr. Bagley is currently participating in first outpatient episode of care with CNYPC, having been diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood. Patient denies any prior outpatient mental health services or treatment in the community and denies any prior inpatient hospitalizations. Patient denies any prior suicide attempts or self-harming behaviors." A PSYCKES was attempted but did not yield any information. There is no known history of mental health treatment. Mr. Bagley is new to prison and he was just opened to outpatient services on 1/12/17. |

NOTE: THIS REPORT IS STRICTLY CONFIDENTIAL AND FOR THE INFORMATION ONLY OF THE PERSON/AGENCY TO WHOM IT IS ADDRESSED. NO RESPONSIBILITY CAN BE ACCEPTED BY CENTRAL NEW YORK PSYCHIATRIC CENTER IF IT IS MADE AVAILABLE TO ANY OTHER PERSON, INCLUDING THE PATIENT. DESTRUCTION OF THIS MATERIAL IS REQUIRED AFTER STATED USE.

EXHIBIT (C)

Arrest Records

| 1. Agency | 2. Div/Precinct | | 3. ORI | 5. Case No. | 6. Incident No. |
|---|---|---|---|---|---|
| EI TROOP E - ZONE 1 | E141 | | NY1270100 | EHQT-BCI | 6849177 |

| 7,8,9. Date Reported (Day, Date, Time) | 10,11,12. Occurred On/From (Day, Date, Time) | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|
| THURSDAY 04/14/2016 15:00 | SATURDAY 01/01/2005 12:00 | TUESDAY 04/12/2016 12:00 |

| 16. Incident Type | 17. Business Name |
|---|---|
| SEX OFNS-RAPE | |

**19. Incident Address (Street Name, Bldg. No., Apt. No.)**
100 CRIMSON KING DR

**20. City/State/Zip**
CANANDAIGUA NEW YORK 14424

| 21. Location Code (TSLED) | 23. No. of Victims | 24. No. of Suspects | 26. Victim also Complainant? |
|---|---|---|---|
| HOPEWELL TOWN 3557 | 1 | 1 | |

**Location Type**
SINGLE FAMILY HOME

| 2. OFF | LAW | SECTION | SUB | ACE | GATE | DEG | ATT | NAME OF OFFENSE | CIS |
|---|---|---|---|---|---|---|---|---|---|
| 1. | PL | 130.25 | 02 | E | F | 3 | C | RAPE 3:VICTIM UNDER 17 YRS.OLD PERPETRATOR 21 YEARS OR | I |
| 2. | PL | 130.30 | 01 | D | F | 2 | C | RAPE 2ND: ACTOR 18 YRS OR MORE - VICTIM UNDER 15 YEARS | 1 |
| 3. | PL | 130.35 | 03 | B | F | 1 | C | RAPE 1ST: INTERCOURSE WITH PERSON LESS THAN 11 YEARS O | 1 |
| 4. | PL | 130.75 | | B | F | 1 | C | COURSE OF SEXUAL CONDUCT AGAINST CHILD- 1ST DEGREE | 1 |
| 5. | PL | 205.30 | | A | M | 0 | C | RESISTING ARREST | 1 |

## ASSOCIATED PERSONS

| Type | Name (Last, First, Middle, Title) | DOB | Street Name, Bldg. No., Apt. No., City, State, Zip | Residence Bus Phone |
|---|---|---|---|---|
| CHILD | BATTING, KAITLYN, M | 06/20/2000 | 100 CRIMSON KING DR CANANDAIGUA NY 14424 | |
| CHILD PROTECTION SERVICES | BUZALKO, TANYA | 09/30/1975 | 3010 COUNTY COMPLEX DRIVE CANANDAIGUA NY 14424 | (585)396-4140 |
| OTHER ASSOCIATE | DAVOLI, ASHLEY, M | 05/16/1984 | CHILD ADVOCACY CENTER OF THE FINGER LAKES CANANDAIGUA NY 14424 | |
| PERSON INTERVIEWED | KIRKLAND, JENNIFER, L | 01/04/1993 | 7 DRUMORE CRESENT EAST ROCHESTER NY | (315)548-3232 (585)478-4384 |
| SUSPECT | BAGLEY, BRIAN, K | 11/13/1967 | 100 CRIMSON KING DR CANANDAIGUA NY 14424 | (585)478-5420 |

## SUSPECT

| Person ID # | 34. Type | 35. Name (Last, First, Middle) |
|---|---|---|
| 4878672 | SUSPECT | BAGLEY, BRIAN, K |

| 37. Apparent Condition | 38. Address (Street Name, Bldg., Apt. No., City, State, Zip) |
|---|---|
| APPARENTLY NORMAL | 100 CRIMSON KING DR CANANDAIGUA NY 14424 |

| 39a.Home Phone | 39b. Work Phone | 40. Social Security | 41. DOB | 42. Age | 43. Gender | 44. Race |
|---|---|---|---|---|---|---|
| (585)478-5420 | | 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 | 11/13/1967 | 37 | MALE | WHITE |

| 45. Ethnicity | 46. Skin | 47. Occupation |
|---|---|---|
| NOT HISPANIC | FAIR | MISCELLANEOUS OCCUPATIONS 48 |

| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses | 53. Build |
|---|---|---|---|---|---|
| 5ft. 11in. | 250lbs. 327 | BROWN | BROWN | UNKNOWN | OVERWEIGHT |

| 54. Employer/School | 55. Employer Address |
|---|---|
| | NY |

**56. Scars/Marks/Tattoos /Description**

**36. Alias/Nickname/Maiden Name**

| Last Name | First Name | MiddleName |
|---|---|---|
| | | |

4/27/2016    12:40:05

## VEHICLE

| 59. Vehicle Status | | | 60. License Plate No. | 61. State | 62. Exp. Yr. | 64. Value |
|---|---|---|---|---|---|---|
| USED IN CRIME | | | EPIC BVB | NY | 2017 | |
| 63. Plate Type | | | 65. Year | 66. Make 67. Model | | |
| PASSENGER AUTOMOBILE (REGULAR PLATES) | | | 2003 | CHRYSLER TOWN AND COUNTRY MINI VAN | | |
| 68. Style | | | | 69. VIN | | 70. Color(s) |
| STATION WAGON | | | | 2C8GP64L53R270061 | | GRAY |
| 71a. Towed By | | | 71b. Towed To | | | |
| STATE POLICE TOW | | | TROOP E HQ | | | |
| 72. Vehicle Notes | | | | | | |

## NARRATIVE

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/14/2016 | 04/14/2016 | EIFERT, MARK (INV) |

**Narrative**

Adopt a Course of Sexual Conduct against a Child case. Inv. Mark E. Eifert

1.      Advised by Ontario County Child Protective of an ongoing sexual assault between a step-father and step-daughter.   At an interview at Canandaigua Academy, 15 year-old KAITLYN BATTING 06/16/2000 disclosed to Ontario County Child Protective Caseworker TANYA BUZALKO, that her step-father, BRIAN K. BAGLEY, has been sexually abusing her since she was 5 years-old.  CPS made contact with BATTING's biological father who agreed to bring her to the Child Advocacy Center of the Finger Lakes immediately.

2.  .  Patrol to the Child Advocacy Center of the Finger Lakes, 482 N. Main St., Canandaigua NY, and observed the interview via closed circuit television, with Ontario County ADA JAMES RITTS and Child Advocacy Specialist ASHLEY DAVOLI.

BATTING reports her step-father, BRIAN BAGLEY, has been "vaginally penetrating" her since she was 5 years-old and continuing until two days ago. She reports sexual contact, oral sex abuse, and sexual intercourse.

BATTING states the last incident of oral sex and sexual intercourse occurred two days ago in BAGLEY's bed. She indicates BAGLEY ejaculated inside her and she cleaned up using a green towel and put on underwear and jeans afterwards.

BATTING says the abuse started when she was approximately 5 years-old. She indicates BAGLEY would lay her down on her stomach, with a towel underneath, and thrust his penis between her thighs until he ejaculated on the towel. She believes she was 8 or 10 years-old when BAGLEY started having vaginal intercourse. BATTING says the sexual contact would happen "every time my mom went out."

BATTING states BAGLEY taught her how to perform oral sex on him, prior to him trying intercourse. She states he would perform oral sex on her and digitally penetrate her.

"Not long ago" BAGLEY performed anal sex on BATTING.  BATTING says BAGLEY claimed it was an accident, but BATTING believes it was intentional. BATTING says BAGLEY had her in a 'doggy style' position and "he missed my vagina and put it in my butt. It took a few minutes before he realized it wasn't in the right place."

In the past, prior to the death of her mother (01/26/2015), BATTING states BAGLEY used her mother's purple dildo to penetrate her vagina.

Regarding her home, BATTING states her step-father has cameras installed in the kitchen, the hallway, her bedroom, and the bathroom. The cameras are currently in the home. BATTING drew a picture of what she believed were the cameras. BATTING added she does not have a door to her bedroom and there is no door to the bathroom. BATTING says she "feels he peeks in on my when I sleep." She believes BAGLEY is spying on her and "it's like he knows everything." BATTING indicates maybe BAGLEY goes through her iPad.

3.   On January 26th, 2015, I was assigned to investigate the aforementioned death of BATTING's mother, CYNTHIA J. BAGLEY.  On that date, I was in 100 Crimson King Drive and observed a camera in the kitchen and that there was no bedroom door or bathroom door.

On that date, BRIAN BAGLEY, showed me how the interior surveillance camera worked and how it operated using his cellular phone. He was able to pull real time video and showed me the two of us talking on his cellular phone screen.

4.   After completion of BATTING's interview at the Child Advocacy Center, I was told BRIAN BAGLEY was observed in the parking lot.

Myself and Senior Inv. CHRISTOPHER BALDWIN found BAGLEY parked in the south side parking lot, in his 2003 Chrysler Town & Country minivan, color grey, bearing NY reg: EPIC BVB.

I interviewed BAGLEY for a short time. He said he was in the parking lot for his daughter. When I asked how he knew his daughter was nearby, he answered "GPS." BAGLEY denied any wrongdoing. I told BAGLEY he was under arrest and he locked the minivan's doors. I was able to unlock the door and a struggle ensued. BAGLEY was able to start the van and flee the scene. A pursuit was initiated and ultimately ended in the driveway of 100 Crimson King Drive, Canandaigua NY 14424, in the Town of Hopewell NY, Ontario County.

BAGLEY was injured while being taken into custody. He was transported to Strong Memorial Hospital, Rochester NY, by Canandaigua Emergency Squad. Trooper ANDREW BROWER maintains custody of BAGLEY, in the ambulance, while Trooper SIDNEY BRIGHT followed behind in a Troop car.

5.    Apply for and obtain a search warrant for 100 Crimson King Drive and BAGLEY's 2003 Chrysler minivan. Search warrant executed on the residence and seize the van to transport it to SP Canandaigua, to conduct the search later.

Evidence seized from the residence includes several laptop computers, cellular phones, and digital cameras. All bedding was removed from the master (Bagley's) bedroom, including a green towel found on the bed. Dirty laundry obtained from the washing machine, included a pair of girls underwear.

A surveillance camera was found in the kitchen, but no other cameras found. Objects BATTING believed to be cameras, in the bedroom, bathroom, and hallways appear to be smoke detectors, specifically First Alert - Atom Photoelectric Smoke & Fire Alarm P1000. The smoke detectors are much smaller than a standard smoke detector and are approximately the size of a shot glass.

6.    KAITLYN BATTING transported to F.F. Thompson hospital and a sexual assault evidence collection kit was completed.

7.    While at Strong Hospital, BRIAN BAGLEY agrees to provide DNA (Buccal Swab) to Inv. WILLIAM SHEETS. Buccal Swab secured as evidence and Voluntary Consent to Obtain Tissue Sample by Oral Swabbing for Forensic Evidence signed by BAGLEY.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/18/2016 | 04/21/2016 | EIFERT, MARK (INV) |
| Narrative |||

8.    On April 18, 2016, at 1-30pm, Senior Investigator Christopher L. Baldwin interviewed Jennifer L. Kirkland at SP Canandaigua regarding the events of April 14, 2106. In sum and substance, she reported that she had cellular telephone conversations with Brian K. Bagley. Some of the calls pertained to be attempting to locate Kaitlyn Batting on that day. Other calls occurred during the police chase that Bagley was involved in. She disclosed that Bagley admitted to sexual contact with Batting, who is her cousin. Bagley admitted that he was headed home to slit his wrists and commit suicide. A statement was secured, copy attached.

In addition, Kirkland was interviewed to determine if she or if she knew of anyone else that was abused by Bagley. She denied that she was abused and noted that he was appropriate around her. She knew of no other victims.

9.    Review of JENNIFER KIRKLAND's deposition reveals when she answered the phone call from BAGLEY, he said "I'm sorry, Jennifer. I'm going to commit suicide." He also said "No, Jennifer, you don't understand. Kait told the police that I was having sex with her." BAGLEY told KIRKLAND "I'm sorry, Jennifer, I told you from the beginning, I was a bad man." When asked BAGLEY confirmed to KIRKLAND that the police were following him. KIRKLAND asked directly if BAGLEY had sex with KAIT and he said "Yes, I did."

The last two paragraphs of KIRKLAND's statement says "Some things started to make sense. I thought that it was weird that there were cameras all over the house. Kait would hug Brian Bagley almost like I would hug my boyfriend. They would kiss on the lips. Kait on occasion sit on his lap. All of this, looking back at it, makes sense. He checked her phone, he had access to her text messages.

Brian Bagley would show me footage of video shot in the house of Kate and one of her male friends. He showed this on his laptop, which was red in color. This occurred during the summer of 2015."

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/24/2016 | 04/24/2016 | EIFERT, MARK (INV) |
| Narrative |||

10.    Review of SJS reveal two cases whereas BAGLEY was suspected of sexual abuse with underaged girls, once against KAITLYN BAGLEY (2006) and one with 12 year-old MONICA ALLEN (2007).

In April 2006, step-mother SABRINA ENNIS 04/24/1980 (married to BATTING's biological father) called the child abuse hotline with suspicions that BRIAN BAGLEY was putting his finger inside BATTING and touching her private parts. Interview of BATTING who did not disclose any such acts. BRIAN BAGLEY denied the accusations.

*INVESTIGATOR - Paul. Look into this to get a report.*

In July 2007, SHERRI KNAAK reported an unusual relationship between BRIAN BAGLEY and her 13 year-old half sister,

*Monica's Brother-in-law was charged w/h ZRPC against Monica. If she told to Bruce. She could have told Bruce.*

MONICA ALLEN. A neighbor told KNAAK that a CATS bus (BAGLEY's employer) was often parked in front of ALLEN's residence for no apparent reason. KNAAK went to the trailer and found the CATS bus parked out front. She went to the door and knocked but got no answer. She stepped inside and called for MONICA. After a few moments, MONICA came out of her bedroom, wearing a mini-skirt and was reportedly breathing heavy. Shortly after, BAGLEY exited the bedroom and KNAAK believes she saw an erection through his clothing.

ALLEN was interviewed but did not disclose any abuse. BAGLEY reports he was helping ALLEN clean her bedroom, as it was the terms set up beforehand, in order for her to visit KAITLYN BATTING.

11. Contact MONNIE ZEPKOWSKI via phone (315) 759-8536, who MONICA ALLEN was living with in 2007. MONNIE was aware of BAGLEY's arrest and states she has spoken to MONICA about it, but she has not mentioned any abuse. MONNIE agrees to pass on a message for MONICA to call me.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/27/2016 | 04/27/2016 | EIFERT, MARK (INV) |
| Narrative | | |

12. Recontact MONNIE ZEPKOWSKI via phone (315) 759-8536, who reports she did pass on a message to MONICA ALLEN, with my phone number.

Case 6849177 - Course of Sexual Conduct against a Child, closed by arrest of BRIAN K. BAGLEY for Rape 3rd. Evidence secured and held by NYSP. PPD

Enclosures
_____

Arrest Report - BRIAN K. BAGLEY
Voluntary Consent Oral Swabbing - BRIAN BAGLEY
Medical Release - KAITLYN BATTING
Supporting Deposition - JENNIFER KIRKLAND
Search Warrant Packet - 100 Crimson King Dr
Search Warrant Packet - 2004 Chrysler minivan
Evidence Records
Receipts                    2003
Digital Photo Record

## ADMINISTRATIVE

| 74. Inquiries DMV CH WW OTH | 75. NYSPIN Message No. | 76. Complainant Signature | | |
|---|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank) INV MARK EIFERT | | 78. ID No. 161 | 79. Supervisor Signature (Include Rank) SR INV CHRISTOPHER BALDWIN | 80. ID No. 1222 |
| 81. Status ARREST - ADULT - PPD | 82. Status Date 04/27/2016 | 83. Notified/TOT | | |

| | | | Solvability Total | 9 |

| 1. NYSID No. 06540111J. | 2. CJTN No. 67627428R, | NEW YORK STATE ARREST REPORT | 3. Case No. 6849177 | 4. Ref. No. |
| 5. FBI No. 293608WA3 | 6. Arrest No. 707247 | 7. Agency E1 TROOP E - ZONE 1 NY1270100 | 8. Div/Precinct EI41 | 4a. |

## DEFENDANT INFORMATION

| 9. Name (Last, First, Middle) BAGLEY, BRIAN, K | | 11. Phone Number (585)478-5420 |
| 12. Street Number and Name, Bldg. No., Apt. No. 100 CRIMSON KING DR | 13. City, State, Zip CANANDAIGUA NY 14424 | 14. Residence Status RESIDENT |

| 15. Place of Birth USA | 16. D.O.B 11/13/1967 | 17. Age 48 | 18. Gender MALE | 19. Race WHITE | 20. Ethnicity NOT HISPANIC |
| 21. Skin FAIR | 22. Height 5ft. 11in. | 23. Weight 250lbs. | 24. Hair BROWN | 25. Eyes BROWN | 26. Glasses UNKNOWN | 27. Build OVERWEIGHT |
| 28. Marital Status WIDOWED | | 29. U.S. Citizen YES | 30. Citizen Of USA | | |

| 31. Soc. Sec. No. 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 | 32. Education HIGH SCHOOL (ENTER 09 - 12) - | 33. Religion UNKNOWN | 35. Employed EMPLOYED FULL TIME |
| 34. Occupation MISCELLANEOUS OCCUPATIONS | | | |
| 36. Scars/Marks/Tattoos Description | | | |

## ARREST INFORMATION

| 37. Arresting Officer/ID EIFERT MARK INV 161 | 39. Assisting Officer/ID BROWER ANDREW TPR 2673 | 41. Arrest Date 04/14/2016 | 42. Time 16:40 |
| 43. Location of Arrest 100 CRIMSON KING DR CANANDAIGUA NEW YORK 14424 | 44. Juvenile NO | 45. Condition of Defendant APPEARS TO BE INJURED/ILL |
| 48. Miranda YES | 49. Miranda By BRIGHT SIDNEY TPR | | 50. Miranda Date 04/14/2016 | 51. Miranda Time 20:14 |
| 52. Statements NONE | 54. Search Warrant YES | 55. ID Procedure NONE | |
| 56. Arraign. Court CANANDAIGUA CITY COURT NY034011J | 57. Arraign. Judge CITY JUDGE ARONSON | |
| 58. Arraign Date 04/15/2016 | 59. Arraign Time 08:30 | 60. Property YES | 61. Evidence YES | 61a. Processed By INV EIFERT |
| 61b. Disposition PENDING ADJUDICATION | 63. Arrestee Status CASH BAIL | | 64. Bail Amount $ 250,000.00 |
| 65. Bondsman | 66. Photo No. | 67. Arrest Type COMPLAINT | 68. Warrant No. 16E043 |
| 69. Arrest FOA NO | 70: Other Agency | | 71. F/P Taken YES |
| 76. Return Court | | 77. Return Judge | |
| 78. Date | 79. Time | 80. Defendant/Case TOT Agency | 80a. Officer Name |
| 81. Case TOT Time | 82. Case TOT Date | 43a. CTV Code HOPEWELL TOWN 3557 | |

Page 1 of 2

4/28/2016    14:30:56

## INCIDENT INFORMATION

| 62. Incident No. | 72. Offense Location | 73. Offense Date/Time | 74. No.Offender | 75. No.Victims | Incident Case No. |
|---|---|---|---|---|---|
| 6849177 | HOPEWELL TOWN 3557 | 1/1/2005 12:00 | 1 | 1 | EHQT-BCI |

## OFFENSE INFORMATION

| 83. LAW Article/Section | SUB | CL | CAT | EG | TI | NAME OF OFFENSE | GTS | NCIC Code | Victim Age Sex Hcdp | ASSOC NO | TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PL  130.25 | 02 | E | F | 3 | C | RAPE 3: VICT LT 17 PERP GT 21 | 1 | 1116 | | | |
| | | | | | | | | | Incident  6849177 | | |

## ASSOCIATED PERSON INFORMATION

| 84. Person Type | Name (Last, First, Middle, Title) | Street Name, Number,,City,State & Zip | Tel No. |
|---|---|---|---|
| CHILD | BATTING, KAITLYN, M | 100 CRIMSON KING DR CANANDAIGUA NEW YORK 14424 | |

| 86. Arresting Officer Signature | | 87. ID No. | 88. Supervisor Signature | | 89. ID.No. |
|---|---|---|---|---|---|
| 90. Arrest Made as a Result of SAFIS Print ID? NO | | 91. | 92. | | 93. |

WAS not fleeing from Av A or B Felony.

WAS Late Indicted on A or B Felony.

4/28/2016   14:30:56